**BRIDGEPORT MUSIC, INC., et al.**

v.

**Irving LORENZO d/b/a DJ IRV Music, et al.**

No. 3:01–0702.

United States District Court, M.D. Tennessee, Nashville Division.

March 26, 2003.

D'Lesli M. Davis, Richard S. Busch, Ralph E. Carter, Jr., Ramona P. DeSalvo, King & Ballow, Nashville, TN, for Bridgeport Music, Inc., Southfield Music, Inc., Westbound Records, Inc., Nine Records, Inc., pltfs.

Robert L. Sullivan, John Claude Beiter, Loeb & Loeb, LLP, Nashville, TN, for TVT Music, Inc. TVT Records, Inc., defts.

Richard Horton Frank, III, Stewart, Estes & Donnell, Nashville, TN, for Diamond Time, Ltd., deft.

## MEMORANDUM

HIGGINS, District Judge.

Pending before the Court is the motion of defendant Diamond Time, Ltd. for award of attorney's fees and related non-

taxable expenses (filed Dec. 5, 2002; Docket Entry No. 256). Defendant has filed a memorandum of law (filed Dec. 5, 2002; Docket Entry No. 257), the declaration of R. Horton Frank, III (filed Dec. 5, 2002; Docket Entry No. 258), a reply memorandum (filed Jan. 23, 2002; Docket Entry No. 281), and the declaration of Cathy Carapella (filed Jan. 23, 2002; Docket Entry No. 282) in support of its motion. The plaintiffs have filed a memorandum (filed Dec. 19, 2002; Docket Entry No. 269) in opposition.

The relevant facts are set forth in the Court's memorandum and order dismissing the plaintiffs' claims against the defendant (entered Nov. 5, 2002; Docket Entry Nos. 233 and 234). In that order, the Court granted the defendant's summary judgment motion as to all claims against it on the grounds that the claims were barred by the statute of limitations.

### STANDARD

■ Section 505 of the Copyright Act provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Supreme Court has enumerated several nonexclusive factors that a court should consider in deciding a motion for fees and costs, including "frivolousness, motivation, objective reasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *see also Coles v. Wonder,* 283 F.3d 798, 803

(6th Cir.2002) (affirming award of attorney's fees to defendants). Because these factors are non-exclusive, the Court needn't find in favor of the prevailing party on each factor in order to award fees, and may take other factors into consideration in exercising its discretion.

■ The primary consideration in deciding a motion for fees should be whether an award will further the policies and objectives of the Copyright Act. *Fogerty,* 510U.S. at 534 n. 19, 114 S.Ct. 1023.

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.... Thus, a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Id.* at 527, 114 S.Ct. 1023.

■ If an award of fees is deemed to be warranted, the amount of the award is determined by calculating the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See U.S. Structures v. J.P. Structures,* 130 F.3d 1185, 1193 (6th Cir.1997). The district court should then exclude excessive, redundant, or otherwise unnecessary hours. *Id.*

### ANALYSIS

#### I. *Defendant is the Prevailing Party*

The defendant prevailed on having all of the plaintiffs' claims[1] against it dismissed

---

1. The defendant in its reply brief (Docket Entry No. 281 at 5–6) has accepted the plaintiff's

with prejudice, therefore it is clearly the prevailing party in this matter. The plaintiffs' contention that it prevailed on certain issues of ownership does not affect the ultimate outcome, the dismissal of its case against this defendant in its entirety, or the analysis of which party prevailed for the purposes of the fee-shifting statute.

## II. *An Award is Warranted by the Facts of This Case*

■ The Court believes that it is in the interests of justice and in furtherance of the objectives of the Copyright Act that an award of fees and costs should be granted to the defendant. The Court identifies the following factors that weigh in favor of an award: (1) the plaintiffs' litigation strategy that resulted in suing defendants against which they had little hope of recovering; (2) the plaintiffs' motivation for failing to dismiss stale claims; (3) the interest in deterring further litigation of stale claims; and (4) the inherent weakness in the plaintiffs' copyright claims against this defendant. These factors dictate that the plaintiffs should be made to answer for litigating this action, and the original action from whence it spawned, in a fashion that contributed to the multiplication of fees amongst all the

parties and resulted in an administrative morass for the Court.

One of the consequences of the plaintiffs' choice to sue hundreds of defendants all at the same time, regardless of the strength of the individual claims, was that the plaintiffs' dragnet inevitably swept up parties against whom they had little or no chance of succeeding. Such is the case here. While the ultimate decision to dismiss the claims against this defendant rested on the statute of limitations, the plaintiffs' claims for contributory infringement and negligence[2] were based on shaky facts and even shakier legal arguments. In response to the defendant's motion for summary judgment, the plaintiffs conceded that they had no claim for direct infringement. Their claim for contributory infringement rested on few facts and on case law that was not factually analogous.[3]

While the Court did not reach the merits of the contributory infringement claim, the significance of the statute of limitations defense to this and numerous other Bridgeport cases must be underscored. Many of the songs in question were released in the early and mid 1990's. Many of these cases involve license agreements that were initially negotiated between the

---

contention that the motion for fees applies only to the plaintiffs Bridgeport Music, Inc. and Westbound Records, Inc., which were the only plaintiffs that had any ownership interest in the works at issue here.

**2.** The plaintiffs have never cited any case law with analogous facts from which the Court could conclude that any legal duty of care was owed to the plaintiffs by the defendant, who was hired by a third party to perform its clearance work.

**3.** For example, the plaintiffs cite only one case in support of their proposition that if Diamond Time "failed to take reasonable steps to prevent infringement by TVT, defendant became a participant in their infringement." The case is *Taylor v. Meirick,* 712

F.2d 1112 (7th Cir.1983), which recognizes a theory of "continuing wrong" that has been soundly rejected by most other circuits. The defendant in that case was the direct infringer (not a contributory infringer) whose copying had occurred outside the limitations period. The court of appeals found him liable for infringement under a continuing wrong theory because his dealers continued to sell the copies within the limitations period. In *Bridgeport Music, Inc. v. Chrysalis Songs,* Case No. 3:01–0701 (entered Oct. 23, 2002; Docket Entry No. 212), this Court declined to follow *Taylor* because its continuing wrong theory has been rejected by every other circuit that has considered it. Moreover, the facts are not analogous. Therefore, there is scant legal support for the plaintiffs' claim of contributory infringement.

plaintiffs and defendants during this same time period. Yet the plaintiffs waited long after the three-year statute of limitations to bring suit. The Court found in this case that the last contact between Diamond Time and the plaintiffs was in December 1995, more than five years before the plaintiffs brought suit. This is not the only Bridgeport case where the plaintiffs' claims were defeated by their failure to act promptly to protect their rights.

The plaintiffs complained repeatedly that the dilatory practices of the music industry, resulting in license agreements never or belatedly being signed and payments never or belatedly being made, allowed the defendants in these cases to abuse the plaintiffs' position as a small company and flagrantly use their copyrighted works without proper compensation. The plaintiffs claim that they did not bring suit in a more timely fashion because these practices kept them from enforcing their rights. The Court sees little merit to this argument (and in fact wholly rejected in this case the argument that these practices amounted to a legal justification for avoiding the statute of limitations). If their copyrights are as valuable as the plaintiffs claim, then it behooves them to police their rights and seek legal redress in a timely fashion, especially where their opponents are huge entertainment conglomerates that may not respond to any other pressure than the threat of a suit. And in the case of those defendants like Diamond Time that have limited operations or financial resources, timely filing of legal action against them would increase the chance that the case is decided on the merits of the claim and not subject to the vagaries of missing documents, faulty recollections and absent witnesses.

The plaintiffs' failure to weed out stale claims means that there remain in these cases numerous claims and defendants that will never make it to trial. The Court must infer from the plaintiffs' actions that these claims remain for the sole purpose of extracting a settlement based on the cost of litigating further. This is not an objective to be promoted under the Copyright Act; to the contrary, the Court sees an opportunity here to deter further misuse of the Court's resources and encourage the prompt dismissal of clearly stale claims in the hundreds of Bridgeport cases that remain before this Court.

### III. *Evaluation of the Reasonableness of the Fees and Costs Sought*

The plaintiffs have objected to the amount of the submitted fees and costs on the following bases: (1) that the declaration of the defendant's counsel is insufficient to establish that the hours claimed are reasonable to obtain the results achieved and that the hourly rate is reasonable; (2) that the defendant is not entitled to recover fees and costs associated with preparation for trial; and (3) that the billing statements contain numerous errors and other unreasonable sums. The plaintiffs also argue that the lodestar amount should be adjusted downward because the defendant did not prevail on every issue it litigated, it incurred fees for scheduled trial preparation while its motion for summary judgment was pending, and it failed to settle the matter early in the proceedings.

### A. *Calculation of the Lodestar Amount of Attorney's Fees*

■ The plaintiffs do not offer any evidence to support their claim that the rates sought by the defendant's counsel are unreasonable or to contradict any of the facts attested to in counsel's declaration. Mr. R. Horton Frank, III is a partner at an established local firm and has practiced law for over 20 years. He has expertise in litigating copyright infringement cases. "In the case of private attorneys... where

an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award." *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir.1995). His requested hourly rate of $225 an hour is in line with the rates charged by experienced copyright attorneys in this market, and the Court finds this rate to be reasonable.

The hourly rate for the minimal amount of time chargeable to an associate, Mary B. Langford, at Mr. Frank's firm is not fully supported by Mr. Frank's declaration, which does not indicate how much experience Ms. Langford has or whether she has expertise in copyright law. Therefore, the Court will reduce the rate recoverable for Ms. Langford's time to $125 an hour. The rate sought for the time charged to the paralegal, Terri Cordrey ($75 an hour) is comparable to the market rates for paralegals in the local market and is unchallenged by the plaintiffs.

The plaintiffs point out that errors exist in the billing statements submitted by the defendant's counsel, some of which are conceded by the defendant. The Court's independent review of the billing statements results in the following calculations of hours sought:

| Invoice Date | Attorney/Paralegal | Hours | Total Amount |
|---|---|---|---|
| 3/1/02 | RHF | 13.50 | $ 3,037.50 |
| 4/30/02 | RHF | 14.58 | $ 3,280.50 |
| 5/31/02 | RHF | 43.83 | $ 9,861.75 |
| 7/15/02 | RHF | 80.08 | $18,018.00 |
| 9/18/02 | RHF | 70.05 | $15,761.25 |
| 9/18/02 | MBL | 8.9 | $ 1,112.50 |
| 9/18/02 | MTC | 7.0 | $ 525.00 |
| 10/14/02 | RHF | 11 | $ 2,475.00 |
| 10/14/02 | MTC | 5.7 | $ 427.50 |
| 11/27/02 | RHF | 79.30 | $17,842.50 |
| 11/27/02 | MTC | 1.5 | $ 112.50 |
| 12/5/02 | RHF | 37.8 | $ 8,505.00 |
| Totals: | | 367.54 | $81,326.54 |

As to the plaintiffs' specific objections, the Court disposes of them as follows:

| Entry Objected To | Plaintiffs' Objection | Analysis |
|---|---|---|
| 9/4/02: Office conference with Terri Cordrey (0.6 hours) | Duplicate charge | Conceded by defendant—$135 deduction |
| 9/24/02: Telephone conference with Susan McDonald (0.35 hours) | Duplicate charge | Conceded by defendant—$135 deduction |
| 9/11/02: Review and revise letter to Cathy Carapella about new case (0.3 hours) | Unnecessary | Conceded by defendant— $67.50 deduction |
| 7/1/02: Travel time to New York; conference with C. Carapella to prepare for deposition (12.0 hours) | Excessive for 3 hour deposition | Reasonable time expenditure— no deduction[4] |
| 3/15/02: Travel time to and from Columbia and attend status conference | Unnecessary (date of entry one day | Entry incorrectly dated— no deduction |

4. Time spent traveling is fully compensable under the law of this Circuit if it is the usual practice in the local market to bill such time to clients. *See Wayne v. Village of Sebring,* 36 F.3d 517, 532 (6th Cir.1994).

| | | |
|---|---|---|
| before Judge Higgins on first ten cases (5.0 hours) | before hearing) | |
| 4/1/02: Call placed to C. Carapella and message left about document inspection (.25 hours) | No reason given | No deduction [5] |

Paralegal charges:

| | | |
|---|---|---|
| 8/28/02: Create pleadings index; sort deposition files; subject files (5.0 hours) | Routine secretarial services | 50% deduction for clerical tasks ($187.50) |
| 8/29/02: Sort pleadings and depositions; organize subfiles (2.0 hours) | Routine secretarial services | 50% deduction for clerical tasks ($75.00) |
| 9/4/02: Sort pleadings and documents for Horton Frank; labels; indices (4.2 hours) | Routine secretarial services | 50% deduction for clerical tasks ($157.50) |
| 9/10/02: Create pleadings binders and organize files for Horton Frank (1.5 hours) | Routine secretarial services | 50% deduction for clerical tasks ($56.25) |
| 9/30/02: Search for two letters for Horton Frank (.3 hours) | Routine secretarial services | 100% deduction for clerical task ($22.50) |
| 10/4/02: Create subject files for documents produced by Bridgeport, BMI and TVT (.2 hours) | Routine secretarial services | 50% deduction for clerical tasks ($7.50) |
| 10/16/02: Create index of files (.5 hours) | Routine secretarial services | 50% deduction for clerical tasks ($18.75) |
| | Total Deduction: | $862.50 |

The Court concludes that the initial lodestar amount is $80,464.04 ($81,326.54 minus $862.50).

## C. *Adjustments to Lodestar Amount of Attorney's Fees*

■ The plaintiffs argue that the lodestar amount should be adjusted downward because the hours devoted by the defendant to opposing the plaintiffs' claims regarding negligence and pre-emption and the hours devoted to trial preparation were not outcome determinative. It is the plaintiffs' opinion that the defendant prevailed on only one aspect of the litigation.

The Court disagrees. The defendant prevailed in having all of its claims dismissed, and therefore it prevailed on all aspects of the litigation in which it was involved. The hours devoted to trial preparation were reasonable and necessary, given that the decision of the defendant's summary judgment motion was not rendered until shortly before the trial was scheduled to start. The Court sees no reason to adjust the lodestar on these grounds.

■ The plaintiffs also argue that a substantial reduction should be made because of the defendant's unwillingness to settle the case. The deadline for filing disposi-

---

**5.** The Court assumes that the plaintiffs object to a 15 minutes charge for leaving a message. However, because it is a common practice in many law firms to bill in quarter-hour incre- ments, and the plaintiffs offer no proof that such a billing practice is unreasonable in the local market, the Court will not require a deduction.

tive motions in this case was June 21, 2002. The plaintiffs' initial settlement demand was not made until September 30, 2002. The plaintiffs cannot be heard now to complain that the defendant did not settle in a timely manner when the first offer to settle was not made until three months after the dispositive motion deadline, and just two months prior to trial, at which point the defendant had already incurred almost two-thirds of the amount of attorney's fees it now seeks.

The Court has reviewed each time entry, and concludes that the fees incurred are reasonable. The defendant was represented for the most part by one attorney, who is an experienced copyright attorney. The record shows that the defendant limited its discovery and motion practice, given its limited resources. The plaintiffs chose to litigate aggressively each and every issue against each and every defendant, regardless of a particular defendant's resources or the strengths of the claims against it. The fees incurred by the defendant here were justified and necessary to guard against the plaintiffs' take-no-prisoners tactics.

 The Court recognizes that not all of the claims dismissed were claims asserted under the Copyright Act. Also dismissed was the plaintiffs' negligence claim. Because there is no fee-shifting statute applicable to the negligence claim, the Court will reduce the lodestar by twenty percent to account for the negligence claim. Therefore, the Court finds no reason to adjust the lodestar amount, and awards fees in the amount of $64,371.23.

B. Reasonableness of Costs Sought

 The plaintiffs claim that the defendant is not entitled to recover litigation costs that were "for the convenience of

counsel rather than a necessity in this action" (Docket Entry No. 269 at 20). The plaintiffs claim that costs for fax, courier, express delivery and Pacer research are part of ordinary overhead and already a component of the attorney's hourly rate. The case in support is inapposite. In *Reid v. New York*, the costs sought were secretarial services, which the court stated were normally included in an attorney's billing rate. 584 F.Supp. 461, 462 (S.D.N.Y.1984). With the exception of fax costs, all the costs complained of here are expenses from third party services that are part and parcel of any litigation, and the Court sees no reason to disallow them. Fax costs are commonly charged to clients as an expense, and the plaintiffs offer no reason why they should be disallowed.

The plaintiffs argue further that the costs for travel to New York for the defendant's deposition should be denied because the motion does not identify from whom such expense was incurred. As Mr. Frank was the only person who charged time for the New York deposition, it will be assumed that he incurred the airfare, hotel and meals expenses associated therewith, and the costs, which are reasonable, will be allowed in full.

The Court has reviewed the costs submitted by the defendant, and concludes that the defendant is entitled to the following nontaxable costs [6]:

| Invoice Date | Amount of Costs |
|---|---|
| 7/15/02 | $ 35.00 |
| 7/15/02 (second invoice) | $1,159.31 |
| 9/18/02 | $ 6.30 |
| 11/27/02 | $ 4.27 |
| Total: | $1,204.88 |

---

**6.** Costs for document copying have been excluded. According to the defendant's motion, these costs were included in the defendant's bill of costs submitted to the Clerk of the Court.

The total amount will be reduced by twenty percent to reflect the portion of costs attributable to the negligence claim that is not subject to fee-shifting. Therefore, the total amount of recoverable costs is $963.90.

*CONCLUSION*

The motion by Diamond Time, Ltd. for attorney's fees and nontaxable costs is granted. The plaintiffs Bridgeport Music, Inc. and Westbound Records, Inc. shall pay attorney's fees in the amount of $64,371.23 and nontaxable costs in the amount of $963.90. An appropriate order will be entered.

*ORDER*

In accordance with the memorandum contemporaneously entered, the motion (filed Dec. 5, 2002; Docket Entry No. 256) of the defendant, Diamond Time, Ltd., for attorney's fees and nontaxable costs is granted.

The defendant, Diamond Time, Ltd., shall recover from the plaintiffs, Bridgeport Music, Inc. and Westbound Records, Inc., jointly and severally, the sums of $64,371.23 in attorney's fees and $963.90 in nontaxable costs.

It is SO ORDERED.