**FHARMACY RECORDS a/k/a, Fharmacy Records Production Co., Fharm I Publishing Company, Shelton Rivers, Plaintiffs,**

v.

**Salaam NASSAR, Curtis Jackson, Darrin Dean, Def Jam Recording, Ruff Ryders, Janice Combs Publishing, Universal Music Publishing, Universal Music & Video Distribution Corporation, Emi April, Inc., Soo Soos Sweet Swisher Music, John Doe, et al., Defendants.**

No. 05–72126.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 15, 2008.

Gregory J. Reed, Stephanie L. Hammonds, Gregory J. Reed Assoc., Detroit, MI, for Plaintiffs.

Leslie C. Schefman, Schlussel and Schefman, Birmingham, MI, Deborah J. Swedlow, J. Michael Huget, Butzel Long, Ann Arbor, MI, Daniel D. Quick, Michael D. Socha, Dickinson Wright, Bloomfield Hills, MI, for Defendants.

## OPINION AND ORDER DENYING PLAINTIFFS' REQUEST TO DISQUALIFY JUDGE, DENYING PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND RELIEF FROM JUDGMENT, DENYING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, AND REFERRING DEFENDANTS' MOTION FOR ATTORNEY'S FEES TO MAGISTRATE JUDGE

DAVID M. LAWSON, District Judge.

Presently before the Court are seven post-judgment motions in this copyright sampling case. Six of the motions were filed by the plaintiffs at various times following entry of this Court's opinion and order granting the defendants summary judgment and judgment dismissing the case on March 31, 2008. One of the motions was filed by the defendants and seeks attorney's fees and costs. The plaintiffs' motions all request relief in one form or another from the Court's judgment of dismissal, except for one motion which asks for attorney's fees. However, the plaintiffs also apparently seek the disqualification of the undersigned, although they have not filed a motion requesting that relief. Instead, the disqualification request is found in the plaintiffs' response to the defendants' attorney's fees motion. Treating the response as a motion to disqualify the undersigned judge, the Court finds no grounds that favor disqualification. The Court also finds no basis to grant relief from its judgment of dismissal, and the plaintiffs' motion for attorney's fees is frivolous. The defendants have shown that they may be entitled to attorney's fees under the Copyright Act and as a result of discovery abuse by the plaintiffs. However, the defendants have not made a proper showing that the amount of fees and costs they seek is reasonable. Therefore, the Court will decline to disqualify itself, deny the plaintiffs' motions for relief from the order of dismissal, deny the plaintiffs' motion for attorney's fees, and refer the defendants' motion for attorney's fees to Magistrate Judge Donald A. Sheer for a report and recommendation.

### I. Facts and Proceedings

The facts of this case are set forth in detail in the Court's order granting the defendants' motion for summary judgment and motion to dismiss, and they need not be repeated here. In brief summary, the plaintiffs brought suit alleging that defendant Salaam Nassar stole a rhythmic beat created by plaintiff Shelton Rivers, a.k.a. the "Ess Man." After Rivers made the beat, the Fharmacy plaintiffs acquired an interest in it and secured copyright protection. Later on, rap artist DMX released a song with a strikingly similar beat entitled "Shot Down." Many of the defendants were involved in the production of "Shot Down" and sales of the album on which it appeared. When the album went platinum, the plaintiffs sued. Their theory was that Nassar had access to Rivers's equipment, and he simply lifted the beat when Rivers wasn't looking. The Court found that the plaintiffs in their complaint alleged unlawful "sampling" of a sound recording in violation of 17 U.S.C. § 114(b), the plaintiffs were unable to produce any evidence that the protected work and the accused work were identical, and the defendants were entitled to summary judgment on the merits of the claim. The Court also documented the disturbing conduct of the plaintiffs and their attorneys in the manipulation and destruction of evidence in the case, which resulted in a

finding that dismissal was an appropriate sanction.

█ In determining that dismissal was an appropriate sanction, the Court discussed the factors outlined in *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir.1988), and concluded as follows:

Looking to *Regional Refuse* and progeny for guidance, the first factor is whether the misconduct by the plaintiffs and their counsel results from "willfulness, bad faith, or fault." *Reyes,* 307 F.3d at 458. In the present case, this factor is plainly satisfied. Although some of the events in this litigation might be excused as resulting from mere negligence when viewed in isolation (e.g., Mr. Reed's loss of the CD allegedly furnished by Seaton), considering them in the aggregate invariably leads to the conclusion that the plaintiffs and their attorney have conducted a campaign of fraud. The list of abuses is extensive. In addition to Mr. Reed's loss of the "original" CD furnished by Seaton, Rivers's zip disk was intentionally wiped of data; Rivers lost the tape recording allegedly containing Nassar's confession; the Fharmacy computer that was allegedly used in 2001 did not even exist until 2003; that computer contained files that were intentionally backdated; the 2001 assignment document referenced entities that were not even formed until 2004; the original assignment documents were lost; the computer that was used to draft such documents was thrown away; and the R.J. Rice hard drive contained file dates that could not be verified. And this list does not even include the material inconsistencies in the plaintiffs' testimony, late disclosure of evidence, misrepresentation of evidence, and prevarications by Mr. Reed in his representations to opposing counsel. If this is not bad-faith litigation, nothing is.

The second factor is whether the defendants have been prejudiced by the plaintiffs' misconduct, *Reyes,* 307 F.3d at 458, and that element too has been satisfied. The plaintiffs seem to think that dismissal would just be a windfall to the defendants because they have come forward with relatively little evidence in support of their version of events. However, the plaintiffs forget that the burden of proof lies with them, and the defendants have a right to test the evidence brought against them. Due to the conduct of the plaintiffs and their attorney, the defendants' right to rebut the plaintiffs' allegations has meant little because the evidence has either been lost, tampered with, or irretrievably compromised. There is simply no way that this case can go forward.

The third factor under *Regional Refuse* is whether the plaintiffs were "warned that failure to cooperate could lead to dismissal." *Reyes,* 307 F.3d at 458. This is the one factor that does not clearly militate in favor of dismissal but, on balance, it is not dispositive. There is nothing in the record showing that the plaintiffs were warned by a judicial officer that dismissal was a possibility. However, this factor seems less relevant in a case such as this, where the conduct at issue is not merely contestable, but in contravention of basic notions of fairness and professional responsibility. A party does not need formal notice to know that spoliation of evidence and misrepresentations may lead to dismissal.

The fourth and final factor is whether less drastic sanctions were imposed or considered before resorting to dismissal. *Reyes,* 307 F.3d at 458. This factor reflects the concept that dismissal is a sanction of last resort and should be issued only in extreme situations. *See*

*Regional Refuse,* 842 F.2d at 154. This factor also favors dismissal of the instant case because lesser sanctions were imposed for earlier discovery violations, *see* Order Granting Mot. for Partial Dismissal and Sanctions [dkt # 55], and anything less than dismissal would be futile. That is, the evidence in this case has been so tainted that pushing onward to a decision on the merits (save granting summary judgment in favor of the defendants, as explained above) would be practically impossible.

*Fharmacy Records v. Nassar,* 248 F.R.D. 507, 530 (E.D.Mich.2008).

Thereafter, the plaintiffs filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) and a motion for reconsideration on April 14, 2008. Pls.' Mots. for Relief and Recon. [dkt # s 250, 253]. The plaintiffs also filed a motion for costs and attorney's fees under 28 U.S.C. § 1927 "for vexatiously multiplying these proceedings unreasonably." Pls.' Mot. for Att. Fees [dkt # 251]. The defendants filed their own motion for attorneys' fees shortly thereafter. Defs.' Mot. for Att. Fees [dkt # 252]. On August 8, 2008, the plaintiffs filed another "expedited" motion for relief under Rule 60(b). Pls.' Mot. for Relief [dkt # 268]. On August 11, they filed yet another. Pls.' Mot. for Relief [dkt # 269]. On August 12, they filed a "motion for ruling on their request for recusal and four pending motions for reconsideration and/or relief from judgment." Mot. for Ruling [dkt # 270].

As noted above, the plaintiffs filed a response to the defendants' motion for attorney's fees in which they stated that the undersigned judge should be disqualified for personal bias against the plaintiffs' attorneys. Although no formal motion seeking that relief was ever filed, the Court will construe the plaintiffs' response as such a motion and turn to it now.

## II. Motion to Disqualify Judge

The plaintiffs insist that the undersigned must disqualify himself and refer all post-judgment motions to another district judge under 28 U.S.C. §§ 455(a) and (b)(1) based upon a "personal bias against ... Gregory J. Reed arising out of [my] background and prior association as a practicing attorney with ... Clark Hill PLC." Resp. Br. [dkt # 257] at 2. The plaintiffs' reasoning goes like this: I was an attorney at the Clark Hill law firm in Detroit; Gregory Reed was involved in a case against the Girl Scouts in the 1990s; the Girl Scouts were represented in the litigation by other attorneys at the Clark Hill law firm; Clark Hill attorneys harbored animosity towards Mr. Reed following his victory in that case; and those attorneys continue to harbor such resentment as evidenced by acts and statements in 2006 and 2008. Based upon these facts, the plaintiffs claim that a reasonable person "would conclude that this Court was aware of the Girl Scouts case and has adopted the personal bias against ... Gregory J. Reed exhibited by his former law firm." *Id.* at 4.

This conclusion is reinforced, the plaintiffs claim, due to a "Notre Dame connection," which the plaintiffs outline thus: Kevin Hendrick, John J. Hern, Jr., and I all attended college in South Bend (although not at the same time), and we all worked together at Clark Hill or another law firm, Hill Lewis. Hendrick represented the Girl Scouts in the aforementioned case, and Mr. Hern is presently Clark Hill's CEO. Although I did not work on the Girl Scouts matter, the plaintiffs say it is fair to impute the alleged bias to me because I supported the Notre Dame Fighting Irish alongside Hendrick and Hern. This is how attorney Reed puts it:

Graduates from the University of Notre Dame feel an extreme sense of pride and school spirit from their alma mater.

The Notre Dame Alumni Association has been in existence [since] 1868 and has nearly 122,000 members. There [are] 267 local Notre Dame Clubs throughout the world including a Detroit Club. The University Alumni Association has developed a professional network for lawyers called[ ] Notre Dame Lawyers in order to strengthen the bond between lawyers who attended the school. Given the spirt of camaraderie among Notre Dame graduates, a reasonable, objective person would believe that three Notre Dame graduates working at the same 100 + person law firm ... would network and befriend one another including discussing difficult cases such as the Reed case with one another.

*Ibid.* So, the plaintiffs believe I am biased against Mr. Reed because Hendrick and Hern did not like Mr. Reed, and Hendrick, Hern, and I all attended the same college. The plaintiffs extend the conspiracy theory slightly farther, observing that other attorneys who work for firms that have a financial stake in this case also attended the University of Notre Dame. *See ibid.* (stating that Plunkett Cooney is seeking to recover $35,000 in fees and costs, but one of its partners is president of the Notre Dame Club of Detroit; and Dickinson Wright is seeking to recover $241,300 in fees and costs even though two of its attorneys are on the Notre Dame Club of Detroit Board of Directors).

The plaintiffs argue that other evidence of bias can be found in "[t]he court clerk receiving a call in open court before the summary judgment hearing began and responding, 'Yes, Mr. Reed is here,' " and the Court calling the rap beat at issue in this case " '[m]ediocre at best.' " *Id.* at 5–6 (quoting Op. and Order at 3).

■■ The trial judge himself must rule on a motion to recuse under 28 U.S.C. § 455. *See In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.

1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify himself."); *see also Schurz Communications, Inc. v. FCC*, 982 F.2d 1057, 1059 (7th Cir.1992) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge.") (*quoting United States v. Balistrieri*, 779 F.2d 1191, 1202–03 (7th Cir.1985)); *Lambert v. Blackwell*, 2001 WL 410639, at *2 n. 2 (E.D.Pa. Apr.20, 2001) ("It is well-established, if not entirely intuitive, that the resolution of such a motion is entrusted to the judge who is the subject of the motion."). More recent Sixth Circuit decisions have noted that a recusal motion is committed to the sound discretion of the district court and the standard of review is whether the court abused its discretion. *Wheeler v. The Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir.1989).

■■ A judge presiding over a case "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," such as when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). "Under 28 U.S.C. §§ 144 and 455, a judge must recuse himself if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir.1999) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir.1990)). Prejudice or bias sufficient to justify recusal must be personal or extrajudicial. *In re M. Ibrahim Khan, P.S. C.*, 751 F.2d 162, 164 (6th Cir. 1984). "Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *United States*

*v. Nelson,* 922 F.2d 311, 319–20 (6th Cir. 1990) (internal quotation marks omitted). Personal bias may arise from the judge's background or associations that "result[ ] in an opinion on the merits on some basis other than what the judge learned from participation in the case." *Ibid.* (internal quotation marks omitted). Bias finding its source in the judge's view of the law or the facts of the case itself is not sufficient to warrant disqualification. *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983). Therefore, disagreement with a judge's decision or ruling is not a basis for disqualification. *Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In making its determination, a court must remember that "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001). "Although a judge is obliged to disqualify himself when there is a close question concerning his impartiality, *United States v. Dandy,* 998 F.2d 1344, 1349 (6th Cir. 1993), he has an equally strong duty to sit where disqualification is not required, *Laird v. Tatum,* 409 U.S. 824, 837, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (separate memorandum of Rehnquist, J.) (collecting cases)." *United States v. Angelus,* 258 Fed.Appx. 840, 842 (6th Cir.2007).

■ The plaintiffs' allegations of judicial bias in this case are feckless and irresponsible. There is no substance to the plaintiff's claim that my association with the Clark Hill law firm—at a time which postdated Mr. Reed's encounter with that firm by a few years—could cause a reasonable person to detect any personal feelings toward attorney Reed. The plaintiffs point to no concrete evidence from which personal bias could be inferred; instead they rely upon an agglomeration of disconnected facts to spin an unlikely yarn that challenges the most active imagination. Judicial impartiality and independence are

serious matters. *See United States v. Johnson,* 488 F.3d 690, 697 (6th Cir.2007) (criticizing a procedure dealing with expert witnesses that "detracts from the court's neutrality and detachment"). However, the plaintiffs have trivialized these attributes by equating proof of bias to a parlor game akin to six degrees of separation. The plaintiffs no doubt are dissatisfied with the outcome of this litigation, but that is no cause for a baseless attack upon the impartiality of the decision maker. *Story,* 716 F.2d at 1090.

The motion to disqualify will be denied.

### III. Plaintiffs' Motions for Relief from Judgment

The plaintiffs have filed several motions for relief from the judgment of dismissal or reconsideration alleging various grounds. In docket number 250, the plaintiffs move for relief under Rule 60 and Local Rule 7.4 based on the following contentions: (1) the relative weight of the evidence offered by the plaintiffs was more than that furnished by the defendants; (2) the fact that plaintiffs' counsel did not lose the original "Ess Beats" CD, as asserted by the Court; counsel says he couldn't find it—he didn't lose it (he claims there is a difference)—and counsel says he found the disk following the Court's decision; (3) the Court erred when accepting the defendants' direct evidence that Rivers's zip disk was intentionally wiped clean; (4) the fact that Rivers did not lose the tape recording with the Rivers–Nassar conversation; Rivers said he couldn't find it, not that he lost it; (5) the court erred when finding that the computer files were back-dated; (6) the Court erred in concluding that the assignment documents referenced non-existent entities; (7) Ms. Baker discarded her computer—on which the assignment documents were supposedly drafted—in good faith; (8) the plaintiffs "produced a consistent theory" that Rivers

created "Ess Beats," which was "invariably verified" by R.J. Rice Studio and R.J. Rice II; (9) the undersigned failed to recuse himself based upon work for the Clark Hill law firm and knowledge of the Girl Scouts case; and (10) Mr. Reed does not have a history of fraud.

In docket number 253, the plaintiffs move for reconsideration under Rule 60(a) or Local Rule 7.4 on the grounds that the Court erroneously construed the complaint as pleading a sampling case only (as opposed to infringement of a musical composition). They believe that the complaint properly construed suggests that the substantial similarity test applies, and the evidence is undisputed that the beats were substantially similar.

In docket number 268, the plaintiffs move for expedited relief from the dismissal order. They argue that the Court erred by relying on Ives Potrafka's expert report where that report was flawed, particularly in its conclusion that the zip disk was "wiped clean." Rivers "presents a reputable Grammy Music Award engineer" (i.e., Hector Delgado), who confirms that this was not the case.

In docket number 269, the plaintiffs move for relief under Rule 60(b) on the grounds that (1) Ives Potrafka mistakenly asserted that the dates of the music files found on R.J. Rice Studio's hard drive could not be verified; and (2) the Court failed to recognize that R.J. Rice and R.J. Rice II are distinct individuals.

Finally, in docket number 270, the plaintiffs ostensibly move for a decision on their post-judgment motions. However, their actual request is that the Court adjudicate the disqualification issue and their motions for relief from judgment and reconsideration before addressing the defendants' motion for attorney's fees. That procedure is the one adopted here, and the motion therefore will be denied as moot.

In the rest of these motions, the plaintiffs have sought relief under Rule 60(a) and (b). Rule 60(a) authorizes the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Rule 60(b) consists of six enumerated clauses that contain the grounds upon which relief from a judgment or order may be granted. These include:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. Pro. 60(b). The Sixth Circuit has "recognized a claim of legal error as subsumed in the category of mistake under Rule 60(b)(1)." *Pierce v. United Mine Workers Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir.1985). When applied under subsection (1), the word "mistake" has been held to include "any type of mistake or error on the part of the court," including a legal mistake. *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir.1983) (citing *Oliver v. Home Indem. Co.*, 470 F.2d 329 (5th Cir.1972)). Nonetheless, a motion based on Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made

a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park,* 226 F.3d 483, 490 (6th Cir.2000) (internal quotation marks omitted). A party may not use Rule 60(b) "as an occasion to relitigate its case." *General Universal Systems, Inc. v. Lee,* 379 F.3d 131, 157 (5th Cir.2004). The Court will grant a motion for reconsideration only if the moving party shows (1) a "palpable defect," (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.,* 177 F.Supp.2d 605, 624 (E.D.Mich.2001). "[M]otions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(h)(3). A decision to grant or deny a Rule 60(b) motion "is a matter of discretion for the district court." *Bank of Montreal v. Olafsson,* 648 F.2d 1078, 1079 (6th Cir. 1981).

The Court finds no grounds to grant the plaintiffs relief under Rule 60(a). The Court has found no clerical mistake or any mistake arising from oversight in its judgment.

Nor does the Court find any basis for granting relief under Rule 60(b). The arguments contained in the motion docketed as entry 250 simply rehash the arguments heard and rejected by the Court in deciding the cross motions for summary judgment and the defendants' motion to dismiss. The motion for reconsideration, docket number 253, is premised on the assertion that the plaintiffs pleaded something other than a copyright sampling case. The Court found otherwise in its opinion and order, and this finding was based on the pleadings and the plaintiffs'

lawyers' assertions on the record at oral argument.

The plaintiffs argue in the motions docketed as entries 268 and 269 that they have discovered new evidence that the zip disk that supposedly contained the original rhythm beat was not "wiped clean," and therefore the Court's reliance on defense expert Ives Potrafka's opinion otherwise is a mistake of fact. The plaintiffs offered evidence purportedly showing that Shelton Rivers's zip disk contains the disputed beat with a creation date between 1998 and 2002.

The evidence, much like the plaintiffs' other offerings, is suspect. The plaintiffs attached various documents to their motion, starting with a letter Rivers sent to a Los Angeles-based FBI agent on July 30, 2008. Rivers posited that "[t]he involved parties paid an excessive amount of monies ... to secure fabricated and perjured evidence that was provided to the court to falsely assert that the evidence was destroyed or wiped clean of a zip disk drive by me in an expert report." Pls.' Exp. Mot., Ex. A, Rivers FBI Letter at 1. To support this claim, Rivers pointed to the testimony of producer and studio engineer Hector Delgado. Apart from the fact that Delgado has no apparent qualifications as a forensic expert—although he has produced songs for Michael Jackson and Jay–Z—Delgado's findings actually *undermine* the plaintiffs' case. Delgado wrote:

> When I finished examining [Rivers's] zip disk I found 19 files on the disk that were created between 1998 and 2002 with the music data file names in the following sequential order:
>
> ...
>
> 10. Ess Beat (Tek/Hip hop) DMX Beat All–Pgm.

Pls.' Exp. Mot., Ex. B, Delgado Aff at ¶ 4. Delgado explained that the above beat was "identical" to the beat used in "Shot

Down." *Id.* at ¶ 5. That is undoubtedly so. But the file name has the sequence "DMX" in it, even though it was allegedly created between 1998 and 2002. DMX did not release *Grand Champ,* the album containing "Shot Down," until September 16, 2003. *See* http://en.wikipedia.org/wiki/ Grand_Champ (last visited Aug. 11, 2008). Rivers never claimed that he created the beat *for* DMX, but that DMX obtained it through theft perpetrated by Salaam Nassar. And this is the first time an "Ess Beats" file name has contained a reference to DMX. The only explanation for this fatal inconsistency is not congruent with a theory that the evidence is genuine. Perhaps the beat was reloaded onto the zip disk with a new file name. In any event, this "evidence" only reinforces the Court's decision.

The Court will deny the plaintiffs' motions for relief from judgment and reconsideration.

### IV. Plaintiffs' Motions for Attorney's Fees

In docket number 251, the plaintiffs move for attorney's fees under 28 U.S.C. § 1927 on the grounds that the defendants abused the "litigation process by asserting and maintaining a meritless defense"; secretly deposing a witness, Rofeal Jackson, "without providing Plaintiffs or their counsel with any notice"; obtaining unnecessary extensions due to Salam Nassar and Soo Soo Sweet's 174–day absence from this litigation; continuing to pursue an independent creation theory when the only evidence supporting that was Nassar's self-serving testimony; engaging in expert-shopping and producing a late expert report; and preventing the delivery of evidence held by Tony Martinez. Pls.' Mot. for Fees at 1–2. This motion is expressly contingent on the Court's granting the plaintiffs' motions for relief from judgment, which has not and will not occur.

The Court has discretion to award attorney's fees, costs, and expenses against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "Under § 1927, a court must review whether the attorneys engaged in conduct which multiplied the litigation unreasonably or vexatiously." *Riddle v. Egensperger,* 266 F.3d 542, 553 (6th Cir.2001). Under this provision, a court may impose sanctions "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986). A finding of bad faith is not necessary under section 1927. *Dixon v. Clem,* 492 F.3d 665, 679 (6th Cir.2007). However, "[s]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927." *Riddle,* 266 F.3d at 553. Rather, " '[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " *Ibid.* (quoting *In re Ruben,* 825 F.2d 977, 984 (6th Cir.1987)). The primary goal of 28 U.S.C. § 1927 is deterrence and punishment. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 647 (6th Cir.2006). As with Rule 11 sanctions, the "district courts have broad discretion in deciding upon a sanction award under § 1927." *In Re Petition of Gerald A. Meier,* 223 F.R.D. 514, 520 (W.D.Wis.2004).

Is assessing the plaintiffs' motion criticizing the conduct of defense counsel, it immediately becomes apparent that the

shoe is on the wrong foot. The proceedings in this case indeed may have been vexatious, but that was not due to the conduct of the defendants or their attorneys. The plaintiffs have not made a showing sufficient to justify an award of fees and expenses under section 1927. Their motion will be denied.

## V. Defendants' Motion for Attorney's Fees

The defendants also have moved for attorney's fees and expenses in the total amount of $543,245.49. They claim that they are entitled to that relief under (1) the Copyright Act, 17 U.S.C. § 505, as the prevailing party; (2) 28 U.S.C. § 1927 as a result of discovery abuse; and (3) the Court's inherent authority to impose monetary sanctions.

 The Copyright Act authorizes an award of costs and reasonable attorney's fees to a prevailing party in an action brought under the statute. 17 U.S.C. § 505. The Court may award attorney's fees if a party's claim is frivolous and objectively unreasonable. *Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 356–57 (6th Cir.2004). Although attorney's fees are not awarded automatically and are still "a matter of the court's discretion," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the grant of fees is routine and is "the rule rather than the exception," *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir.2007) (internal quotation marks omitted).

 More particularly, judicial discretion should be exercised in an evenhanded manner "consistent with the primary purposes of the Copyright Act." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807 (6th Cir.2005). Nonexclusive factors that help inform the exercise of judicial discretion include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023. No single factor is necessary or dispositive on its own; rather, the *Fogerty* factors—along with other factors a court might find pertinent—assist courts in weighing various considerations. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir.2004).

 The Court may also award fees and costs under 28 U.S.C. § 1927, as noted earlier, against an attorney whose conduct is unreasonable and which multiplies the proceedings vexatiously. In accordance with the language and purpose the statute, a court may hold parties and their counsel jointly and severally liable under section 1927. *See, e.g., Royal Oak Entertainment, LLC v. City of Royal Oak*, 486 F.Supp.2d 675, 679 (E.D.Mich.2007).

 When it comes to arriving at an exact sum, the typical approach under fee-shifting statutes is the following:

> A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "result obtained."

*Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (calculation of attorney's fees under 42 U.S.C. § 1988). Although *Wayne* was a section 1988 case, the Sixth Circuit has adopted the lodestar approach for calculations under the Copyright Act, albeit in an unpublished opinion. *Ametex Fabrics, Inc. v. Custom Interiors and Supply Co.*, 162 F.3d 1161, 1998 WL 553046, *3 (6th Cir. Aug.11, 1998) (Table); *see also Bridgeport Music, Inc. v. Lorenzo,*

255 F.Supp.2d 795, 800–01 (M.D.Tenn. 2003), *aff'd sub nom., Bridgeport Music, Inc. v. Diamond Time, Ltd.,* 371 F.3d 883 (6th Cir.2004)

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; *accord Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.,* 50 F.3d 253, 261 (3d Cir.1995); *see also Dubay v. Wells,* 442 F.Supp.2d 404, 415–16 (E.D.Mich.2006); *Mehney–Egan v. Mendoza,* 130 F.Supp.2d 884, 885 (E.D.Mich. 2001).

■ In the present case the Court has little trouble concluding that the plaintiffs and their counsel should be held jointly and severally liable for the defendants' costs and fees. An award is appropriate under both 17 U.S.C. § 505 and 28 U.S.C. § 1927; the Court need not resort to its inherent authority. An award of costs and fees to the prevailing party in a copyright action is "the rule rather than the exception." *Thoroughbred Software,* 488 F.3d at 362 (internal quotation marks omitted). Certainly the circumstances of the present case do not dictate a departure from the usual course of things. The *Fogerty* factors—"frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence"—all weigh heavily in favor of costs and fees under section 505. *See Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. 1023. The last factor is particularly compelling; justice requires that the defendants be compensated for the distress of warding off a frivolous case.

Although section 505 does not expressly authorize an award from an attorney for a party, 28 U.S.C. § 1927 plainly does. A court may hold parties and their counsel jointly and severally liable under that statute for "multipl[ying] the proceedings in any case unreasonably and vexatiously." *See* 28 U.S.C. § 1927; *Royal Oak Entertainment, LLC,* 486 F.Supp.2d at 679. There likely is cause to hold attorney Gregory Reed accountable for at least a portion of the fees and expenses, and perhaps against Mr. Reed's co-counsel, Stephanie Hammonds, as well. Those issues will be referred to Magistrate Judge Donald A. Sheer to determine.

With respect to the amount of attorney's fees and costs, the defendants have produced the following chart:

| DEFENDANT | TOTAL DEFENSE COST |
| --- | --- |
| The Universal Defendants and Curtis Jackson (Represented by Dickinson Wright PLLC) (Exhibit A–1) | $214,994 (Fees) $12,043.93 (Costs) $14,273.28 (Experts) |
| EMI April Music, Inc. (Represented by Butzel Long PLC) (Exhibit A–2) | $189,506.00 (Fees) $ 7,016.50 (Costs) $ 14,273.28 (Experts) |
| Janice Combs Publishing d/b/a Justin Combs Publishing. (Represented by Plunkett Cooney PLC and Butzel Long PLC beginning in August 2007, as well as Jonathan D. Davis, P.C. ___) (Exhibits A3–A4) | $35,000.00 (Plunkett Cooney Fees and Costs) $25,224.00 (Jonathan D. Davis P.C. Fees) $ 142.75 (Jonathan D. Davis P.C. Costs) |
| Salam Nassar and Soo Soo Sweet Swisher Music (Represented by the Law Offices of Leslie Schefman) (Exhibit A–5) | $30,771.75 (Fees) |
| Totals | $543,245.49 |

Br. in Supp. at 5–6. The Court finds that the exhibits on which these figures are premised do not furnish the level of detail that is required to determine the reasonableness of the fee requests. For example, to account for Dickinson Wright's fees and costs for June 2005 (based on work by partner Daniel Quick and associate Michael D. Socha), the firm writes:

**June 2005**

**Tasks/Events**

- Review and analysis of complaint; conducting preliminary interviews and background investigation in preparation for responding to the complaint
- Draft and file motion for partial dismissal (dismissal of state law claims)
- Draft and file answer to complaint

| | |
|---|---|
| Hours Billed: | 14.60 |
| Total Fees: | $3,290.50 |
| Total Costs: | $ 225.27 |
| Total for Month: | $3,515.77 |

Br. in Supp., Ex. A1, Dickinson Fees and Costs at 3. These entries do not allow the Court to assess the amount of time spent on specific tasks by individual lawyers, and they do not furnish sufficient detail to permit a reasoned challenge by the plaintiffs or their attorneys. The defendants state in their brief that they are "willing to provide their billing records should the Court so desire, but given the conduct of Plaintiffs' counsel to date, they prefer that such a review occur *in camera* by the Court." Br. in Supp. at 6. The defendants correctly anticipate the need for further review, but they have not justified the need for *in camera* protection. However unreasonably the plaintiffs and their counsel have behaved, they have not forfeited the right to examine the defendants' billing records.

The Court, therefore, will refer the defendants' attorney's fees motion to Magistrate Judge Donald A. Sheer to conduct a hearing in whatever manner he deems appropriate for the purpose of determining the amount of attorney's fees, costs, and expenses, if any, that should be awarded to the respective defendants, and to determine further whether the plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses, and to prepare a report and recommendation on these matters in accordance with 28 U.S.C. § 636(b)(1).

## VI. Conclusion

The Court finds no merit in the plaintiffs' motions for relief from judgment, reconsideration, or attorney's fees and expenses. The plaintiffs' motion for a decision has been mooted by the procedures utilized by the Court herein. The defendants are entitled to attorney's fees and expenses, but the questions of the respective amounts and accountable persons requires a hearing.

Accordingly, it is **ORDERED** that the plaintiffs' motions for relief from judgment and reconsideration [dkt # s 250, 253, 268, 269] are **DENIED.**

It is further **ORDERED** that the plaintiffs' motion for attorney's fees and costs [dkt # 251] is **DENIED.**

It is further **ORDERED** that the defendants' motion for attorney's fees and costs [dkt # 252] is **GRANTED IN PART.**

It is further **ORDERED** that the plaintiffs' motion for ruling [dkt # 270] is **DENIED as moot.**

It is further **ORDERED** that the defendants' motion for attorney's fees and costs [dkt # 252] is **REFERRED** to Magistrate Judge Donald A. Sheer to conduct a hearing to determine the amount of attorney's fees, costs, and expenses, if any, that should be awarded to the respective defendants, and further to determine whether the plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses, and to prepare a report

and recommendation on these matters in accordance with 28 U.S.C. § 636(b)(1).